FILED
2026 Nov-18 PM 01:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

FILED
2026 NOV 18 A 11: 36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**VICTORIA GALLAGHER,**
Plaintiff,

v. **Case No. 2:26-cv-01809-SGC**

**CMC STEEL US, LLC,**
Defendant.

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** Plaintiff Victoria Gallagher ("Plaintiff"), proceeding *pro se* pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), and files this First Amended Complaint against Defendant CMC Steel US, LLC ("Defendant" or "CMC"), stating as follows:

---

## I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal statutes: the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"); and the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA").

2. Venue is proper in the Northern District of Alabama, Southern Division, pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within this District and the unlawful employment practices and wage violations alleged herein occurred at Defendant's facility in Birmingham, Jefferson County, Alabama.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 13, 2026 (Charge No. 420-2026-02533), alleging disability discrimination, failure to accommodate, hostile work environment, and retaliation under the ADA.

4. On August 18, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights ("Right to Sue") on Charge No. 420-2026-02533.

5. Plaintiff timely commenced this civil action on October 5, 2026, within ninety (90) days of receiving her Notice of Right to Sue, and files this First Amended Complaint within twenty-one (21) days of Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Events occurring prior to February 14, 2026, are set forth herein as relevant background context establishing Defendant's knowledge, pattern of conduct, and retaliatory intent, while Plaintiff's actionable ADA claims rest upon discrete discriminatory and retaliatory acts occurring on and after February 19, 2026, within 180 days of Plaintiff's EEOC Charge.

## III. PARTIES

6. Plaintiff Victoria Gallagher is an adult resident of Trussville, Jefferson County, Alabama, and is an "employee" within the meaning of the ADA, FMLA, and FLSA.

7. Defendant CMC Steel US, LLC is a foreign limited liability company operating a rebar fabrication facility at 3500 27th Avenue North, Birmingham, Alabama 35207 (employing approximately 30 to 50 individuals on site), alongside a recycling facility directly across the street, a steel mill nearby in Birmingham, Alabama, and an additional mill facility in Pell City, Alabama—employing well over 50 individuals within a 75-mile radius and over 11,000 individuals nationwide—making Defendant a covered "employer" under the ADA, FMLA, and FLSA.

## IV. FACTUAL ALLEGATIONS

### A. Employment Background and Disability Accommodations

8. Defendant hired Plaintiff on or about November 14, 2022, as an hourly, non-exempt Production Scheduler at its Birmingham, Alabama facility, under an original hiring agreement that included a hybrid work arrangement.

9. Plaintiff performed her duties proficiently and received positive annual performance evaluations, including "OTHigh" ratings in customer service and teamwork prior to changes in local management.

10. Plaintiff is an individual with a qualifying disability within the meaning of the ADA, as documented by her treating physicians on file, which substantially limits major life activities including neurological functioning, concentrating, sleeping, and working without accommodation.

11. Because local management failed to honor Plaintiff's original hybrid work agreement, Plaintiff was forced to request a formal reasonable accommodation under the ADA, which Defendant's Human Resources department approved, allowing her to work remotely on a hybrid/remote basis.

### B. Revocation of Accommodation, FMLA Interference, and February 19, 2026 Threat of Termination

12. Plaintiff was eligible for and utilized job-protected leave under the FMLA.

13. Upon Plaintiff's utilization of FMLA leave, Defendant's management improperly revoked Plaintiff's approved remote-work accommodation, asserting that Plaintiff could not maintain both FMLA leave and an ADA remote-work accommodation simultaneously.

14. Defendant's management forced Plaintiff back into the physical office despite her active medical restrictions and approved ADA accommodation.

15. Plaintiff was required to spend several months gathering and submitting medical documentation to prove that Defendant's revocation of her accommodation violated federal law before Defendant's regional Human Resources department finally reinstated her ADA remote-work accommodation

16. Following the reinstatement of Plaintiff's ADA accommodation, and after Plaintiff reported internal scheduling and operational discrepancies to her supervisor and General Manager, management subjected Plaintiff to an escalating campaign of retaliatory micromanagement, isolation, unwarranted performance downgrades, and hostility.

17. On February 19, 2026, Plaintiff's direct manager, General Manager, and Human Resources representatives confronted Plaintiff, falsely accused her of insubordination for utilizing her approved remote-work accommodation, issued a disciplinary write-up, and threatened her with termination.

**C. Retaliatory Harassment and Forced Medical Leave**

18. Unlike similarly situated Production Schedulers who were permitted to work remotely without interference, management stripped Plaintiff of scheduling decision-making authority, repeatedly placed multiple management officials in disciplinary meetings against her, and subjected her to hostile treatment.

19. Defendant's retaliatory harassment and hostile environment directly caused severe work-induced psychological trauma and a worsening of Plaintiff's medical conditions. Resulting in a subsequent diagnosis of Post-Traumatic Stress Disorder ("PTSD") that was not pre-existing prior to Defendant's unlawful workplace conduct. Requiring weekly trauma therapy and forcing Plaintiff onto a medical leave of absence beginning on or about May 16, 2026.

20. At the outset of Plaintiff's medical leave, Defendant further interfered with her leave benefits by removing her accrued vacation time and delaying payroll transmissions, requiring Plaintiff to intervene to obtain payment.

21. Throughout her active employment with Defendant from November 14, 2022, through May 2026, Plaintiff was classified as an hourly, non-exempt employee

paid on an hourly rate basis and regularly worked forty (40) or more hours per week.

22. Throughout her employment, Plaintiff regularly worked overtime hours exceeding forty (40) hours in a workweek.

23. Following changes in local management and pay-coding practices, Defendant subjected Plaintiff to two systematic timekeeping practices that deprived her of earned wages and overtime compensation:

- **Automatic 30-Minute Meal Deductions:** Defendant automatically deducted thirty (30) minutes per shift for meal breaks from Plaintiff's recorded hours even though Plaintiff was the sole Production Scheduler at the Birmingham facility, was routinely required by work demands and management interruptions to work through her lunch periods without an uninterrupted break, and was not compensated for that worked time.
- **Biased Time-Clock Rounding:** Beginning in 2025, while still operating the same electronic timekeeping system that had calculated Plaintiff's hours accurately in 2024, Defendant altered how the system rounded punches so that it systematically rounded Plaintiff's clock-in and clock-out punches in Defendant's favor, shaving compensable minutes off Plaintiff's shifts across workweeks in 2025 and 2026. When Defendant subsequently replaced its timekeeping system in Spring 2026, the new system cut off the dates on Plaintiff's printed time cards regardless of her print formatting efforts, preventing Plaintiff from printing complete, date-stamped copies to track and verify her exact shift punches.

24. Because Plaintiff regularly worked forty (40) or more hours per week, Defendant's automatic deduction of unprovided meal periods and one-sided rounding of shift punches (rounding clock-in and clock-out punches up or down whenever doing so favored Defendant) resulted in Plaintiff working uncompensated hours above forty (40) hours per week without receiving overtime pay at one and one-half times her regular rate of pay, as documented in Plaintiff's retained time cards and pay stubs. For example, during the weekly pay periods covering August 24, 2025, through September 6, 2025—as well as numerous comparable weekly pay

periods across 2025 and 2026 and throughout her employment—Plaintiff worked in excess of forty (40) hours per week and was deprived of earned overtime compensation due to Defendant's automatic 30-minute meal deductions during worked lunches and biased time-clock rounding.

25. Plaintiff reported these timekeeping discrepancies in writing to her direct supervisor and verbally to the General Manager, who ignored her complaints and retaliated against her rather than correcting the underpayments.

26. Defendant's failure to pay Plaintiff for all hours worked and overtime earned was knowing, deliberate, and willful, reflecting an established corporate timekeeping policy that Defendant refused to correct even after Plaintiff notified management.

## V. CAUSES OF ACTION

### COUNT I: DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE (ADA — 42 U.S.C. § 12112)

27. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 19 as if fully set forth herein.

28. At all relevant times, Plaintiff had a qualifying disability within the meaning of the ADA and was a qualified individual capable of performing the essential functions of her Production Scheduler position with a reasonable remote-work accommodation.

29. Defendant discriminated against Plaintiff because of her disability and violated 42 U.S.C. § 12112(b)(5)(A) by revoking her previously approved remote-work accommodation, forcing her to work in the office against medical restrictions, disciplining her and threatening termination on February 19, 2026, for utilizing her accommodation, and subjecting her to disparate terms and conditions of employment compared to non-disabled schedulers.

30. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, pain and suffering, and exacerbation of her medical conditions.

## COUNT II: RETALIATION (ADA — 42 U.S.C. § 12203)

31. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 19 as if fully set forth herein.

32. Plaintiff engaged in statutorily protected activity under the ADA by requesting reasonable accommodations, utilizing her approved remote-work accommodation, submitting medical documentation asserting her ADA rights, and opposing Defendant's unlawful revocation of her accommodation.

33. Defendant subjected Plaintiff to materially adverse actions because of her protected activity, including issuing a false disciplinary write-up and threatening termination on February 19, 2026, escalating micromanagement and hostility after her accommodation was reinstated, downgrading her performance ratings, and forcing her onto medical leave.

34. A direct causal connection exists between Plaintiff's protected ADA activities and Defendant's adverse actions, which occurred immediately following her accommodation requests and reinstatement.

35. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered economic losses, emotional distress, and medical harm.

## COUNT III: RETALIATORY HOSTILE WORK ENVIRONMENT (ADA — 42 U.S.C. §§ 12112, 12203)

36. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 19 as if fully set forth herein.

37. Following Plaintiff's assertion of her ADA rights and reinstatement of her accommodation, Defendant subjected Plaintiff to severe and pervasive harassment, intimidation, isolation, group disciplinary confrontations, and

micromanagement that altered the conditions of her employment and created an abusive working environment.

38. Defendant knew of the hostile environment created by its management team, failed to take prompt remedial action, and constructively forced Plaintiff onto medical leave on May 16, 2026.

**COUNT IV: INTERFERENCE WITH FMLA RIGHTS (FMLA — 29 U.S.C. § 2615(a)(1))**

39. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 20 as if fully set forth herein.

40. At all relevant times, Plaintiff was an eligible employee and Defendant was a covered employer under the FMLA.

41. Defendant unlawfully interfered with, restrained, and denied the exercise of Plaintiff's FMLA rights in violation of 29 U.S.C. § 2615(a)(1) by revoking her existing ADA remote-work accommodation as a penalty for taking FMLA leave, misrepresenting that FMLA leave and ADA accommodations could not coexist, stripping her accrued vacation time at the start of her leave, and interfering with her leave payroll continuity.

42. As a direct result of Defendant's interference, Plaintiff suffered lost compensation, benefit disruptions, and emotional harm.

**COUNT V: RETALIATION FOR EXERCISING FMLA RIGHTS (FMLA — 29 U.S.C. § 2615(a)(2))**

43. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 20 as if fully set forth herein.

44. Plaintiff engaged in protected activity under the FMLA by applying for and taking job-protected medical leave.

45. Defendant retaliated against Plaintiff for exercising her FMLA rights by revoking her remote-work accommodation, forcing her back into the office, issuing a

disciplinary write-up and termination threat on February 19, 2026, downgrading her performance evaluations, and subjecting her to intensified scrutiny and harassment upon her return.

46. As a direct result of Defendant's FMLA retaliation, Plaintiff suffered lost wages, diminished benefits, and emotional distress.

**COUNT VI: INDIVIDUAL CLAIM FOR UNPAID OVERTIME AND WAGES (FLSA — 29 U.S.C. §§ 206, 207, 216(b))**

47. Plaintiff re-alleges and incorporates by reference Paragraphs 1, 2, 6, 7, 8, and 21 through 26 as if fully set forth herein.

48. Plaintiff brings this Count solely on her own individual behalf at this stage because she is currently proceeding *pro se*; however, Plaintiff expressly reserves all rights to retain licensed legal counsel in the future, to seek leave of Court to assert collective or representative claims under 29 U.S.C. § 216(b) upon the appearance of counsel, and to report any systemic wage-and-hour violations to the United States Department of Labor Wage and Hour Division.

49. At all relevant times, Plaintiff was a non-exempt hourly employee entitled to overtime compensation at one and one-half times her regular rate of pay for all hours worked in excess of forty (40) hours in a workweek under 29 U.S.C. § 207(a)(1).

50. Defendant violated 29 U.S.C. § 207(a)(1) by automatically deducting thirty (30) minutes per shift for meal breaks during which Plaintiff actually performed work, and by systematically rounding Plaintiff's time-clock punches up or down in Defendant's favor, resulting in unpaid overtime compensation throughout Plaintiff's employment.

51. Because Defendant's violations were willful within the meaning of 29 U.S.C. § 255(a), Plaintiff is entitled to recover unpaid overtime wages for the full three-year statutory period, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b).

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Victoria Gallagher respectfully requests that this Court enter judgment in her favor and against Defendant CMC Steel US, LLC, and award the following relief:

a. Back pay, lost wages, lost bonuses, and lost employment benefits resulting from Defendant's ADA and FMLA violations;

b. Reinstatement or, in the alternative, front pay and continued employer-paid health insurance benefits;

c. Compensatory damages for emotional pain, suffering, mental anguish, and loss of enjoyment of life under the ADA;

d. Punitive damages under the ADA for Defendant's willful, malicious, and reckless indifference to Plaintiff's federally protected rights;

e. Liquidated damages under the FMLA pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

f. All unpaid straight-time and overtime wages owed to Plaintiff individually under the FLSA, together with an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

g. Pre-judgment and post-judgment interest as allowed by law;

h. All taxable court costs and litigation expenses incurred by Plaintiff; and

i. Such other and further legal or equitable relief as the Court deems just and proper.

**VII. JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims and issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted this 18th day of November, 2026.

Victoria Gallagher.

**Victoria Gallagher**, *Pro Se*
3473 Hampton Court
Trussville, Alabama 35173
Telephone: 205-902-5626
Email: vicgal72@gmail.com

---

**CERTIFICATE OF SERVICE**

I hereby certify that on this _____ day of November, 2026, a true and correct copy of the foregoing **Plaintiff's First Amended Complaint and Demand for Jury Trial** was served via United States Certified Mail, postage prepaid, and electronic mail upon

Defendant's counsel of record:
**Michael C. Guarino, Esq.**
**David Nikolic, Esq.**
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
420 20th Street North, Suite 1900
Birmingham, AL 35203
Email: michael.guarino@ogletree.com
Email: david.nikolic@ogletree.com